IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**VICTOR ANSPACH,**

      Plaintiff,

vs.                                    Civ. No. 99-1423 MV/DJS

**WILLIAM A. HALTER,**[1] **Acting Commissioner of Social Security,**

      Defendant.

### MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

1.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this

---

[1] Pursuant to Fed.R.Civ.P. 25, William A. Halter, Acting Commissioner of Social Security is substituted for Kenneth S. Apfel, Commissioner, as the Defendant in this action. Mr. Halter was nominated by President Bill Clinton on October 1, 1999, and confirmed by the United States Senate on November 10, 1999. He was the first confirmed Deputy Commissioner of Social Security.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

matter for a rehearing. The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff filed for Social Security Disability Insurance benefits on July 30, 1996. Tr. 14. The application was denied initially and on reconsideration. Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ). The ALJ found that Plaintiff was not disabled. Tr. 19. The Appeals Council denied Plaintiff's request for review. Tr. 4-5. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability since November 3, 1994, due to degenerative disc disease and bulging discs. Tr. 98 and 105. Plaintiff was born on August 9, 1943 and was fifty-four years old on the date the ALJ issued his decision. Tr. 98. Plaintiff has a high school diploma and completed two printing apprenticeship programs. Tr. 39-40, 109. He has worked as a letter press operator. Tr. 109.

**Issues**

4.   Plaintiff alleges that the ALJ erred in the following:

1) in his analysis of the Plaintiff's credibility; 2) in failing to adequately analyze Plaintiff's non-exertional limitations; and 3) in failing to consider the combined effects of Plaintiff's impairments.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes him from returning to his past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering his age,

3

education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

    7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that he is not engaged in substantial gainful employment;  (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that he has met or equaled a listing, he must show at step four that he is unable to perform work he had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his age, education, and prior work experience.  If a determination of disablity is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

    8.  Upon reaching the fifth step of the sequential evaluation

process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert

5

testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

**Discussion**

10.   Plaintiff argues that the ALJ must be reversed on the grounds that the ALJ found that Plaintiff's back symptoms were not a recent development but a condition he has lived and worked with for over a decade. This statement is supported by the substantial evidence in the record. The findings in the ALJ's decision are not in error.

11.   According to the record, Plaintiff first had back pain in 1986. He re-injured his back in 1992 and 1994. This was correctly noted by the ALJ. Tr. 15. Plaintiff testified that his last day of work was November 3, 1994. He testified that he was injured on the job that day and that this caused a significant deterioration in his back condition. There is evidence that Plaintiff was fired from his job in 1994 because he was in an altercation with a co-worker. Tr. 136.

12.   The medical evidence does not support a finding that his back condition deteriorated and was disabling in 1994. The Act defines a physical impairment as one "that results from anatomical,

physiological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. Sec. 423(d)(3). The Commissioners' regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques. 30 C.F.R. Sec. 404.1513.

13.  In November of 1994 Plaintiff had a magnetic resonance imaging scan (MRI). The results showed only degenerative disc disease and mild diffuse bulges at L1/2, L2/3, and L3/4. Tr. 155. Martin Blacker, M.D., interpreted this MRI as showing no herniated disc or spinal stenosis. Tr. 134. In 1994 the Plaintiff had good overall muscle condition and normal gait. Tr. 163 and 168. He had slightly decreased range of motion in his spine. Tr. 163. However, there was no muscle atrophy to support a finding of muscle disuse. Id. Plaintiff's sensations were intact and he had no muscle spasms. Tr. 163 and 169. In 1997 Dr. Harvie reviewed Plaintiff's C-T scan and myelogram. Dr. Harvie did not note any findings on these objective medical tests. He did note that Plaintiff's EMG was negative. Tr. 169. On exam, Dr. Harvey found that Plaintiff's gait was normal and there was no loss of strengh in his muscles. Tr. 168.

14.  Plaintiff also argues that the ALJ failed to properly analyze Plaintiff's subjective complaints of pain. Again, a review of the decision clearly shows that the ALJ analyzed Plaintiff's subjective complaints as required in Luna v. Bowen, 843 F.2d 161 (10th Cir. 1987) and SSR 96-7p. The ALJ specifically found that

Plaintiff had a pain producing impairment and there was a nexus between the pain he suffered and his back.  The ALJ further considered whether the pain was so severe that it precluded any gainful employment.  <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990).  In this analysis, the ALJ specifically discussed Plaintiff's daily activities.  Plaintiff told the consultative physician, Gwen Y. Sun, M.D. that he walked, fed the animals, watched movies and performed some light housekeeping.  Tr. 17. This is inconsistent with the testimony Plaintiff gave at the hearing. However, it is obvious from Dr. Sun's report that she obtained this information from the Plaintiff.  The ALJ considered other statements from medical sources relating to Plaintiff's functional abilities.  Tr. 17 and 18.   Plaintiff's treating physician, Dr. Vanzant, wrote that if Plaintiff's job was modified he would be able to work with his impairment. Tr. 156. He further found that Plaintiff was able to perform light work and released him from care.  The ALJ properly considered the fact that Plaintiff did not take any medicine other than aspirin for his pain. Tr. 16. Plaintiff was prescribed Ultram in May of 1997.  Ultram is a non-steroidal, non-narcotic pain reliever and anti-inflammatory medication.  Plaintiff however did not get the prescription filled until three months later and stated he only used it sometimes. Tr. 169, 171 and 178.  The ALJ further considered that the Plaintiff received epidural steroid injections.  Plaintiff testified that they did not help the pain.  Tr. 47. However, the evidence in the

record shows he did get varying degrees of relief.  Tr.  134, 141 and 147.

15.  The ALJ set forth specific reasons underlying his credibility determination and because the substantial evidence in the record supports these reasons the ALJ's credibility determination should not be disturbed.  See Kepler v. Chater, 68 F.3d 387, 392 (10th Cir. 1995).  The ALJ addressed all of Plaintiff's non-exertional limitations.  The ALJ in great detail analyzed the findings of Dr. Vanzant, Plaintiff's treating physician, and stated he concurred with Dr. Vanzant's functional assessment.  Tr. 17.  This assessment included nonexertional limitations.  Dr. Vanzant found that Plaintiff could walk four to six hours, sit for five to eight hours and drive for three to five hours.  Tr. 157-58.  He further found that the Plaintiff could bend, stoop and climb occasionally and twist, squat and reach over his shoulder frequently.  Id.

16.  The ALJ included these specific limitations into the hypothetical questions that he relied upon in finding that the Plaintiff was not disabled.  The ALJ wrote in his decision that his hypothetical questions assumed the Plaintiff's "age, education, and work experience, together with his residual functional capacity, as set forth above."  Tr. 18.  The vocational expert testified that Plaintiff could perform light and sedentary work as a ware cleaner, ticket seller and cashier II.  Tr. 55-56.  According to the vocational expert all of these jobs exist in significant numbers in

the national economy. Id. The vocational expert's testimony provided a proper and adequate basis for finding Plaintiff was not disabled. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). Only when the vocational expert was asked to assume that the Plaintiff had all the limitations that the Plaintiff had testified to did the vocational expert find that there were no jobs in the economy for the Plaintiff. However, the record does not support Plaintiff's alleged functional limitations. Thus, this response is not binding on the ALJ. Gay, 986 F.2d at 1336.

  17. Plaintiff's assertion that the ALJ did not consider the combination of Plaintiff's impairments in determining that he was not disabled is also without merit. The ALJ specifically performed this analysis in his decision. Tr. 15. A reading of the decision and record clearly shows that the ALJ evaluated the whole record. He analyzed the medical findings, Plaintiff's daily activities, and Plaintiff's testimony. The ALJ specifically discussed Plaintiff's limitations and the medical evidence in the record. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)("To require a more elaborate articulation of the ALJ's though processes would not be reasonable.").

  18. Plaintiff is not, as he argues, being penalized for working. Rather, the fact that he has worked with the same condition for many years is a factor that the ALJ properly considered. Williams v. Chater, 923 F. Supp. 1373, 1379 (D. Kan. 1996.)("Evidence of employment during a period of alleged

disability is highly probative of a claimant's ability to work."); Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)("[Plaintiff] worked with his impairments over a period of years without any worsening of his condition.  Thus, he cannot claim them as disabling."); Smith v. Chater, 959 F. Supp. 1142, 1150 (The ALJ is required to consider work history as one factor in determining credibility.").

**Recommended Disposition**

    For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**